IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSPE ASSOCIATES, LTD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 -CV-837 |
| | ) |
| CSL BIOTHERAPIES, INC., and JOHN DOES 1- | ) Judge Virginia M. Kendall |
| 10, | ) |
| | ) Magistrate Judge Nan R. Nolan |
| Defendants. | ) |

## MEMORANDUM OF DEFENDANT CSL BIOTHERAPIES IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II AND III PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendant CSL Biotherapies ("CSL"), by and through its counsel, pursuant to

Federal Rule of Civil Procedure 12(b)(6), respectfully moves this Court to dismiss Counts II and

III of the complaint of plaintiff INSPE Associates Ltd. ("Plaintiff or "INSPE"). In support of its

Motion, CSL submits the following.

## I.    INTRODUCTION

INSPE is a medical practice that appears to specialize in filing "unsolicited fax"

class actions.[1]   It has brought a three-count putative class action complaint against CSL based on

---

[1]    By our count, INSPE Associates and its counsel at the Edelman, Combs law firm have brought at least *twelve* other such cases in the Chancery Court in Chicago (some of which have been removed to federal court). *See, e.g., INSPE v. Pro Rhythmic Marketing LLC*, No. 07 CH 35574 (Ill. Cir. Ct. (Cook Co.) filed Dec. 4, 2007); *INSPE v. Diversified Healthcare*, No. 07 CH 34992 (Ill. Cir. Ct. (Cook Co.) filed Nov. 29, 2007); *INSPE v. USA Meso Inc.*, No. 07 CH 18658 ((Ill. Cir. Ct. (Cook Co.) filed July 16, 2007); *INSPE v. Midwest Waste Services LLC*, No. 07 CH 18661 (Ill. Cir. Ct. (Cook Co.) filed July 16, 2007); *INSPE v. Advanced Transducer Service*, No. 07 CH 10727 (Ill. Cir. Ct. (Cook Co.) filed Apr. 18, 2007); *White v. Ecarfly, Inc.*, No. 07 CH 27740 (Ill. Cir. Ct. (Cook
(continued...)

the allegation that, on November 27, 2007, CSL sent INSPE an unsolicited two-page fax

promotion and order form for CSL's newly approved, mercury-free influenza vaccine, Afluria®.

The gravamen of INSPE's complaint is the claim that this fax allegedly violates a federal law

designed to address the transmission of unsolicited faxes -- the Telephone Consumer Protection

Act, 27 U.S.C. § 227, *et seq.* ("TCPA") -- which can provide a prevailing plaintiff with $500 to

$1500 for each violative fax transmission.  CSL intends to vigorously contest this allegation, but

it is not moving to dismiss the TCPA claim at this time.

   However, CSL is moving to dismiss INSPE's attempt to "triple dip" on its

allegations by claiming that the alleged unsolicited fax transmission also violates the Illinois

Consumer Fraud and Deceptive Practices Act, 815 I.L.C.S. 505/2 ("ICFA"), and constitutes

common-law conversion.  As already found by the two courts in this District that have reviewed

this precise issue, such state law claims fail as a matter of law, and should be dismissed.

*Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.*, 443 F. Supp. 2d 976, 978 (N.D. Ill. 2006)

(Shadur, S.J.) (granting defendant's motion to dismiss plaintiff's ICFA and conversion claims

pursuant to Rule 12(b)(6)); *Western Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, No. 06 C

---

(...continued)

  Co.) filed Dec. 19 2006) (INSPE was co-plaintiff); *INSPE v. Acculaser Therapy*, No. 06
CH 24803 (Ill. Cir. Ct. (Cook Co.) filed Nov. 15, 2006); *INSPE v. CSBK*, No. 03 CH
10966 (Ill. Cir. Ct. (Cook Co.) filed July 1, 2003);  *INSPE v. Charter One Bank*, No. 03
CH 10965 (Ill. Cir. Ct. (Cook Co.) filed July 1, 2003); *INSPE v. Taranto*, No. 06941
(N.D. Ill. filed Dec. 10, 2007); *INSPE v. Avenues International Inc.*, No. 00111 (N.D. Ill.
filed Jan. 9, 2006); *INSPE v. Texas DCS*, No. 02090 (N.D. Ill. filed Apr. 13, 2006).

0052, 2006 WL 1697119, at *1 (N.D. Ill. June 13, 2006) (Grady, J.) (granting defendant's motion to dismiss ICFA claim).[2]

Neither the ICFA nor common-law conversion is intended to duplicate what Congress already has addressed through the TCPA. The ICFA is designed to protect people from oppressive and unfair conduct that causes, and was intended to cause, substantial injury. As both *Paddock* and *Western Railway* already have found in identical contexts, the transmission and receipt of a two-page fax is neither "oppressive" nor the cause of "substantial injury" under Illinois consumer protection law. In addition, INSPE has not alleged, nor could it allege, that CSL intended the fax to be unfair to INSPE, as it must to survive this motion.

INSPE's third claim--that CSL converted the "ink or toner and paper" (Complaint, ¶ 47) -- also fails as a matter of law. The claim of conversion is designed to address the unlawful holding of another person's specific chattel. As the *Paddock* court found, INSPE's ink or toner and paper are not such "specific chattel," and CSL assumed no dominion over such matter. 443 F. Supp. 2d at 980.

In short, INSPE's effort to parlay its federal TCPA claim into state law claims is legally unwarranted, and therefore those legally deficient claims should be dismissed.

## II.    INSPE'S FACTUAL ALLEGATIONS

In its complaint, INSPE alleges that it is a corporation with offices in Chicago, and that CSL is a Delaware corporation. (Complaint, ¶¶ 1, 2). INSPE further alleges that on

---

[2]    Of note, counsel for INSPE in this action also was the counsel for plaintiff in *Western Railway*, where plaintiff's ICFA claim in relation to an unsolicited fax transmission was dismissed pursuant to a Rule 12(b)(6) motion.

November 27, 2007, CSL sent it a two-page unsolicited fax advertisement and order form for

CSL's newly approved, mercury-free flu vaccine, Afluria®. (Complaint, ¶ 7 and Exhibit A of

the Complaint). While INSPE also alleges that, "[o]n information and belief," the fax was sent

as part of a "mass broadcasting" of faxes to other persons (Complaint, ¶ 13), there is no averment

that INSPE received anything other than the two-page flu vaccine promotion and order form

attached as Exhibit A of the complaint.

There is no averment that the two-page fax caused any disruption to INSPE's

business or the operation of its fax machine. There is no averment that the contents of the fax are

false, misleading, or deceptive. Rather, INSPE merely contends that the sending of the alleged

fax is an "unfair practice" and "contrary to public policy" under the ICFA because, according to

INSPE, the fax effectively shifts the cost of the advertisement to it "in the form of paper and ink

or toner consumed as a result [of the fax]." (Complaint, ¶¶ 32-37). INSPE also claims that the

alleged unsolicited fax constitutes an "unauthorized" appropriation of the paper and ink or toner,

making such paper and ink or toner unusable, and thus a conversion. (Complaint, ¶¶ 48-52).

## III.    RULE 12(b)(6) STANDARD FOR MOTION TO DISMISS

The U.S. Supreme Court has recently clarified the standard to be applied to a Rule

12(b)(6) motion to dismiss as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations... a plaintiff's obligation
> to provide the "grounds" of his "entitlement to relief" requires
> more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do... Factual allegations
> must be enough to raise a right to relief above the speculative
> level....

4

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *accord E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*).  To be sure, "[i]n ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and must view the allegations in the light most favorable to plaintiff." *Villasenor v. American Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *2 (N.D. Ill. July 9, 2007) (Kendall, J.) (citing *Singer v. Pierce & Assocs*, 383 F.3d 596, 597 (7th Cir. 2004)).  However, "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." *Id.* (quoting *Bell Atlantic*, 127 S. Ct. at 1969 n.8).  Simply put, "[i]t is not ... proper to assume that [the plaintiff] can prove facts that it has not alleged." *Id.*

## IV.   INSPE'S ICFA CLAIM SHOULD BE DISMISSED BECAUSE INSPE HAS FAILED TO ALLEGE OPPRESSIVE CONDUCT, SUBSTANTIAL INJURY, OR THAT CSL INTENDED TO ENGAGE IN ANY UNFAIR PRACTICE TOWARD INSPE.

### A.   INSPE Failed to Allege Any "Unfair" or "Deceptive" Act or Practice by CSL.

To successfully state a claim under the ICFA, the plaintiff must allege "(1) a deceptive act or unfair practice by the defendant; (2) that the defendant intended that the plaintiff rely on that act or practice, or intent by the defendant to deceive, defraud, or be unfair to the plaintiff; (3) that the deception or unfair practice occurred in the course of conduct involving trade or commerce; and (4) that the deceptive act or unfair practice proximately caused the plaintiff's injury." *Garrett v. Rentgrow*, No. 04 C 8309, 2005 WL 1563162, at *2 (N.D. Ill. July 1, 2005); *Villasenor*, 2007 WL 2025739, at *4; *Western Ry.*, 2006 WL 1697119, at *4 (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417, 775 N.E.2d 951, 960 (2002)).  A claim brought pursuant to the ICFA must allege the deceptive or unfair business practices of the

defendant with specificity and particularity. *Robinson*, 201 Ill. 2d at 419, 775 N.E.2d at 961; *Gallagher Corp. v. Mass. Mutual Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996).

In *Robinson*, the Illinois Supreme Court set out the three factors that determine whether a given course of conduct is "unfair" under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." 201 Ill. 2d at 417-18, 775 N.E.2d at 961; *see also Paddock*, 443 F. Supp. 2d at 978; *Western Ry.*, 2006 WL 1697119, at *4.

In this case, the conduct of which INSPE complains – the transmission of an unsolicited fax advertisement – is not actionable as a matter of law under the ICFA, as INSPE's averments clearly do not meet, at a minimum, the second or third factors of *Robinson*'s three-pronged "unfairness" test.[3]

### 1.    The Transmission of an Unsolicited Fax Advertisement is Not "Oppressive" Conduct Pursuant to the ICFA.

First, the alleged conduct of CSL is not "oppressive" under the second prong of *Robinson*'s unfairness test. Specifically, INSPE alleges that on November 27, 2007, it received a

---

[3]    At best, INSPE's complaint could be said to allege, for purposes of this motion only, that the transmission of the fax violated public policy. CSL disputes that, but in any event the law is clear that INSPE cannot state a claim under ICFA based solely on the allegation that the conduct was contrary to public policy. *See Paddock*, 443 F. Supp. 2d at 979 ("Of the three *Robinson*-identified factors, only the 'public policy' consideration is met, and the patent inapplicability of the other two factors to Paddock's one-page fax advertisement heavily outweighs that one element in the evaluation called for by *Robinson*."); *Western Ry.*, 2006 WL 1697119, at *7 ("Although the alleged practice of Lusida may offend public policy, it is not sufficient to support a finding of unfairness in light of the lack of oppressiveness or substantial injury."); *Whiting*, No. 02 CH 6332, at *18 (Ill. Cir. Ct. (Cook Co.) Apr. 3, 2003) (attached hereto at Exhibit A); *Weiss, Sugar, Dvorak & Dusek v. Human Resource Store, Inc.*, No. 03 CH 21867, at *14 (Ill. Cir. Ct. (Cook Co.) Oct. 12, 2004) (attached hereto at Exhibit B).

single fax advertisement from CSL. (Complaint, ¶ 7). INSPE does not allege that it received multiple faxes from CSL, or that the alleged fax from CSL caused any disruption to its business or the operation of its fax machine.

"[A] practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer." *Western Ry.*, 2006 WL 1697119, at *5. Federal courts facing the issue (and several state courts as well) have held repeatedly that receipt of just one or two fax advertisements "suggests minimal disruption of one's business or occupation" and this "conduct does not rise to the level of oppression envisioned by the drafters of ICFA." *Id.* (citing *Whiting*, No. 02 CH 6332, at *17-18); *see also Paddock*, 443 F. Supp. 2d at 979 (joining the views stated in *Western Railway*); *Weiss, Sugar, Dvorak & Dusek*, No. 03 CH 21867, at *13.

As in these cases, INSPE's allegations are insufficient as a matter of law to demonstrate that CSL's alleged fax is "oppressive" and therefore actionable under the ICFA. Accordingly, INSPE's claim under the ICFA should be dismissed.

**2.    INSPE Has Not and Cannot Allege "Substantial Injury" as a Result of the Alleged Two-Page Fax Transmission from CSL.**

INSPE also has failed to adequately allege that it suffered substantial injury. "A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Western Ry.*, 2006 WL 1697119, at *6.

INSPE alleges that it "suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result," but merely alleges the receipt of a single two-page fax. (Complaint, ¶¶ 7, 35). Courts have consistently found that allegations

of *de minimis* injury just like those averred here are insufficient as a matter of law to constitute the "substantial injury" required by the *Robinson* test. As Judge Grady observed in *Western Railway*, "[t]he cost of receiving and printing a single page facsimile advertisement cannot be characterized as 'significant harm.'" 2006 WL 1697119, at *6 (citing *Kim v. Sussman*, No. 03 CH 07663, 2004 WL 3135348, at *3 (Ill. Cir. Ct. (Cook Co.) Oct. 19, 2004) (finding allegation of damages from alleged conversion of the paper and toner necessary to print unsolicited faxes "miniscule, i.e. pennies per plaintiff" in denial of class certification motion)); *see also Paddock*, 443 F. Supp. 2d at 979. *Accord Whiting*, No. 02 CH 6332, at *18 ("There are no facts from which the Court can determine the amount of damages incurred [due to an unsolicited fax] by the suggested class plaintiff or consumers as a whole. The term 'substantial' is clearly a conclusion."); *Weiss, Sugar, Dvorak & Dusek*, No. 03 CH 21867, at *13-14; *see also Missouri ex rel. Nixon v. Progressive Bus. Publ'ns*, 504 F. Supp. 2d 699, 706-07 (W.D. Mo. 2007) ("[T]o the extent that plaintiff claims that misappropriating and converting facsimile recipient's paper, toner, and facsimile machine without the recipient's permission is an unfair practice, this Court agrees with the District Court of the Northern District of Illinois that such activities do not by themselves implicate state unfair trade practices laws because 'the burden imposed by [the faxing entity] can hardly be characterized as unreasonable, nor does it deprive [the recipient] of a meaningful choice.'") (quoting *Western Railway*).

Nor can INSPE aggregate the alleged injury of other members of its putative class to manufacture "substantial injury." INSPE has alleged receipt of just one fax, which clearly is not a substantial injury or otherwise actionable. Where, as here, a putative class representative has no valid claim in its own right, it cannot bring such a claim, or try to cure it, on behalf of a

8

putative class. *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581, 284 Ill. Dec. 103, 109,

809 N.E.2d 225, 231 (1st Dist. 2004). As Judge Grady ruled on precisely this issue, because

INSPE "has failed to allege that it personally suffered substantial injury under the ICFA, its class

allegations have no bearing on this motion." *Western Ry.*, 2006 WL 1697119, at *6.

Finally, INSPE's allegation that CSL derived an "unfair competitive advantage

over businesses that advertise lawfully," (Complaint, ¶ 36), is of no moment to the survival of

INSPE's claim. A private cause of action brought under the ICFA for an allegedly "unfair" act

requires that the plaintiff itself suffer actual substantial injury as a result of the act complained

of. *Western Ry.*, 2006 WL 1697119, at *6; *Garrett v. Rentgrow, Inc.*, 2005 WL 1563162, at *4.

Whatever injury, if any, CSL's competitors may have allegedly suffered as a result of CSL's

alleged unsolicited fax campaign is irrelevant to whether INSPE can establish its own claims

against CSL.

### B.    INSPE Has Not and Cannot Allege that CSL Intended the Transmission of the Fax to be Unfair to INSPE.

INSPE has not alleged, as required by the ICFA, that the intent of CSL in

transmitting the fax advertisement was to be unfair to INSPE. *See Western Ry.*, 2006 WL

1697119, at *4; *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960. This defect alone is sufficient

to render INSPE's ICFA claim deficient and is grounds for dismissal pursuant to Rule 12(b)(6).

*See Garrett*, 2005 WL 1563162, at *4 ("To satisfy this [intent] requirement, a plaintiff must

allege either intent by the defendant that the plaintiff rely on that act or practice, or intent by the

defendant to deceive, defraud, or be unfair to the plaintiff.").

Accordingly, the legally deficient ICFA claim should be dismissed.

V.    **INSPE'S CLAIM FOR CONVERSION SHOULD BE DISMISSED BECAUSE THE PROPERTY ALLEGEDLY MISAPPROPRIATED CANNOT BE THE SUBJECT OF A CONVERSION CLAIM.**

INSPE's claim for conversion is just as deficient as its ICFA claim, and likewise should be dismissed. INSPE alleges that CSL converted "ink or toner and paper belonging to plaintiff and the class members." (Complaint, ¶ 47). The court in *Paddock* found that such allegations do not state a claim for conversion under Illinois law because the ink or toner and paper allegedly misappropriated by CSL are not "specific chattel" that can be the subject of a conversion claim. 443 F. Supp. 2d at 980 (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002)); *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 793 (N.D. Ill. 1997) ("The subject of conversion must be an identifiable object of property.").

"The essence of a conversion claim is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Paddock*, 443 F. Supp. 2d at 980 (quoting *Horbach*, 288 F.3d at 978). The "object unlawfully held" needs to be "specific chattel" for a conversion claim to lie. *Id.*; *see also Cumis*, 983 F. Supp. at 793.

In *Paddock*, the Court found that the amount of toner, paper and ink in the fax that would be involved in the printing of a two-page fax would be so *de minimis* as to not be "specific chattel," but instead a trifling with which the law should not concern itself. 443 F. Supp. 2d at 980 ("[T]he ancient maxim 'de minimis non curat lex' ['the law does not concern itself with trifles'] might well have been coined for this occasion."). The Supreme Court of Nevada, in affirming the dismissal of a conversion claim for an act of unsolicited faxing, similarly invoked this maxim, finding the damage alleged "so insignificant that it cannot give rise to a viable

10

property damage claim." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287-88 (Nev. 2006).

INSPE's conversion claim also fails because it did not -- and cannot -- allege that CSL "unlawfully held" its toner, paper and ink. As Judge Shadur observed in dismissing plaintiff's similar conversion claim:

> [I]t would impermissibly warp the concept of "conversion" if that label were to be attached to [Plaintiff's] property (ink, toner and paper) that never came into [defendant's] possession at all--that was never "unlawfully held" by [defendant], and as to which [defendant] could be said to have "assumed control, dominion or ownership over the property" only by stretching that language beyond its normal meaning.

*Paddock*, 443 F. Supp. 2d at 980.

Accordingly, the conversion claim in Count III is deficient as a matter of law and should be dismissed. [4]

---

[4]    We note that there are Illinois state trial court decisions denying motions to dismiss ICFA and/or conversion claims in unsolicited fax cases. *See Whiting*, No. 02 CH 6332; *CE Design Ltd. v. ZMC, Inc.*, No. 03 CH 1304 (Ill. Cir. Ct. (Du Page Co.) Nov. 5, 2004); *Eclipse Mfg. Co. v. T.J. Copy Prods., Inc.*, No. 03 CH 1344 (Ill. Cir. Ct. (Lake Co.) Apr. 23, 2004). However, as Judge Shadur noted in *Paddock* in refusing to follow just such cases, *Erie v. Tompkins* principles do not require a federal court to follow the decisions of state trial courts. Furthermore, even while noting that he was not bound by it, Judge Shadur critiqued this body of state case law and deemed it "dubious" support for plaintiff's claims, given that *Whiting* outright rejected the ICFA claim, *CE Design* demanded repleading of claimed damages, and *Eclipse* cast doubt on the sufficiency of allegations for both the second and third prongs of the *Robinson* test. *See Paddock*, 443 F. Supp. 2d at 979.

## VI.    **CONCLUSION**

For the foregoing reasons, Counts II and III of INSPE's putative class action complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) for failing to state a claim upon which relief may be granted.

Dated:  February 15, 2008

Respectfully submitted,

/s/ Marshall Blankenship
One of the attorneys for Defendant CSL
Biotherapies, Inc.

James D. Adducci
jadducci@adlmb.com
Marshall L. Blankenship
mblankenship@adlmb.com
Adducci, Dorf, Lehner, Mitchell
  & Blankenship, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL  60601
(312) 781-2800

OF COUNSEL:

Burt M. Rublin
rublin@ballardspahr.com
Robert R. Baron, Jr.
baron@ballardspahr.com
Susanna R. Greenberg
greenbergsr@ballardspahr.com
Ballard Spahr Andrews
  & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

Jodi R. Hill
hillj@ballardspahr.com
Ballard Spahr Andrews
 & Ingersoll, LLP
3300 Tower, Suite 1800
3300 North Central Avenue
Phoenix, AZ  85012-2518
(602) 798-5472

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

WHITING CORPORATION, Plaintiff

v.

MSI MARKETING, INC., Defendant

No. 02 CH 6332

Decided April 3, 2003

NOTICE: The rules of some jurisdictions may impose limitations on the use of materials not designated for publication in certain officially sanctioned reporters. Consult the rules of the applicable jurisdiction regarding use and citation of this opinion.

**DISPOSITION:**

Defendants' consolidated motions to dismiss denied with respect to all claims except claims under the Illinois Consumer Fraud and Deceptive Practice Act.

**SYNOPSIS:**

A large number of related cases bringing TCPA, state statutory, and state common law claims were consolidated for hearing defendant's motion to dismiss on various arguments. The United States intervened. The court rejected claims that the TCPA violated 1) First Amendment speech rights, 2) due process and excessive fines clauses, and 3) vagueness doctrine. The court also sustained common law conversion claims. The court dismissed state claims under the Illinois Consumer Fraud and Deceptive Practice Act.

**SUBSEQUENT HISTORY:**

**PRIOR HISTORY:**

**CITED BY:**

**APPEARANCES:**

**JUDGES:**
Patrick E. McGann

**HOLDINGS:**

[1] **Constitutional Law: First Amendment**

As the statute in question seeks to regulate commercial speech, it must meet the test set out in *Central Hudson*.

[2] **Constitutional Law: First Amendment**

Deference must be accorded to its findings as to the harm to be avoided. *Turner Broadcasting System, Inc.*

> **EXHIBIT**
>
> A

**Exhibit 3**

**[☞3] Constitutional Law: First Amendment**

The TCPA does not create a complete ban on telephone facsimile advertising.

**[☞4] Constitutional Law: First Amendment**

The TCPA does not prohibit the use of telephone facsimile devices for advertising.

**[☞5] Constitutional Law: Vagueness**

Defendants should not be heard to complain of the statute's vagueness when defendants conduct comes clearly within the proscription of the statute. *Village of Hoffman Estates.*

**[☞6] Constitutional Law: Excessive Fines**

The amount of damages is the result of the defendants' use of technology to aggressively violate a statute that is clear on its face.

**[☞7] Opt-in/Opt-out**

Rejecting the "opt-in" interpretation recognizes the role of the Supremacy Clause in our dual sovereign form of government. There is no prohibition to the maintenance of a private right of action for violation of the TCPA in state courts because Illinois has not acted to decline jurisdiction over these matters.

**[☞8] State Common Law Claims**

To sufficiently allege conversion a plaintiff must allege: 1) the defendant's unauthorized and wrongful act of control, dominion or ownership over the plaintiff's personal property; 2) the plaintiff's right in the property; 3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and, 4) the plaintiff's demand for possession of the property.

**[☞9] State Common Law Claims: Conversion**

The use of a facsimile machine for the distribution of printed material imposes all of the attendant costs on an unwilling recipient. This is sufficient to allege the first three elements of the tort of conversion.

**[☞10] Actual Damages**

The doctrine of *de minimus non curat lex* is usually confined to matters involving an alleged breach of contract.

**[☞11] State Law Claims**

There is no question that transmitting unsolicited telephone facsimile advertisements violates public policy.

**OPINION:**


CORRECTED MEMORADUM OPINION AND ORDER

**[*1] I. INTRODUCTION**

     Commencing in 2001, numerous plaintiffs have filed more than 30 complaints in the Circuit Court of Cook County, Illinois seeking relief against various defendants for actions involving the sending and receipt of advertisements via telephone facsimile machines. These actions were assigned to this Court, as related by the Presiding Judge of the Circuit's Chancery Division.

     Court and Counsel have conducted case management conferences in an effort to create an efficient management plan for the processing of these cases. As a result, this Court entered a case management order which allowed defendants to file consolidated Motions to Dismiss the separate or consolidated complaints filed by the Plaintiffs. The Court also required the Plaintiffs in those cases to file a consolidated response. A list of all the cases to which this order applies is attached as Exhibit A. The court, on a later date, will entertain any Motions to Dismiss that raise individual issues pertinent only to the moving party.

     On March 4, 2003, the Court allowed the United States of America to intervene, as one of the issues raised in the consolidated Motions was the constitutionality of 47 U.S.C. 227 (b)(1)(c). The Court also entertained oral argument on these consolidated Motions on that date. The grounds and issues raised in those motions will be discussed as they relate to each theory of recovery.

[*2] Each of the complaints seek money damages on three theories: 1) the private right of action granted to each recipient of an unsolicited telephone facsimile advertisement, 47 U.S.C. 227(b)(3)("TCPA"); 2) violations of the Illinois Consumer Fraud and Deceptive Practices Act, ("ICFA") 815 ILCS 505/2; and 3) common law conversion.

The well-pled facts, as they relate to these motions, allege that each plaintiff received an unsolicited advertisement via the use of their personal telephone facsimile machine. This action limited each plaintiff's access to equipment used in their business, occupation or for personal use. This activity also converted each plaintiff's personal property; to wit, paper and toner, to their own use.

## II. CONSTITUTIONALITY OF REGULATION OF TELEPHONE FACSIMILE ADVERTISING

The defendants, in their consolidated Motion to Dismiss the plaintiffs' claims brought pursuant to the TCPA, assert that the regulation of advertisements by telephone facsimile is unconstitutionally vague and unnecessarily impinges on freedom of speech rights granted by the First Amendment. In addition, they argue that the TCPA violates the advertiser's Due Process Rights under the Fifth and Fourteenth Amendments and imposes excessive fines in violation of the Eighth Amendment.

The Telephone Consumer Protection Act of 1991, codified at 47 U.S.C. 227, provides in relevant part; "It shall be unlawful for any person...to use any [transmitting device]...to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. 227(b)(1)(c). The term "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. 227(a)(4). Thus, the TCPA prohibits only commercial advertising.

[☞1] As the statute in question seeks to regulate commercial speech, it must meet the test set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Initially, it must be observed that commercial speech is different from other varieties of speech because it proposes a commercial transaction which traditionally occurs in an area subject to governmental regulation. *Ohralik v. Ohio* [*3] *State Bar Assn.*, 436 U.S. 447, 445-456 (1978). However, any regulation of such speech must be cognizant of the controlling principle that our union depends on a free enterprise economy. The allocation of society's resources depends upon a free flow of information. Thus, it is in society's interest that a free flow of information be maintained so that the consumer has enough information to make intelligent and well informed decisions. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*, 425 U.S. 748 (1976).

In order to maintain the balance between the limited ability of government to regulate commercial speech and the consumer's right to the full and free flow of information, the Court in *Central Hudson* adopted a four part analysis to determine the constitutionality of any proposed restriction on commercial speech. First, the court must determine whether the speech comes within the First Amendment. To be protected, such speech must concern lawful activity and not be misleading. Next, the court must determine whether the government's interest in regulating the communication is substantial. If these two tests are met, then a determination must be made as to whether the regulation directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve the asserted interest. *Central Hudson*, 447 U.S. at 566.

Applying this analysis to the TCPA's ban on unsolicited telephone facsimile advertising, it is clear there is no claim that any of the information distributed is misleading or promotes any illegal activity.

The Plaintiffs bear the burden of establishing that the legislation survives the remainder of the analysis. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995). The Plaintiffs and the intervening Petitioner United States of America, posit that the TCPA was enacted to address the substantial government interest of preventing the shifting of the cost of advertising to the potential consumer and the economic disruptions caused by the intrusive activity of the defendants. The Plaintiffs include this later interest under the broad umbrella of "invasion of privacy." The Court's determination of substantial governmental interest is limited to these two pronouncements. This Court cannot engage in supposition to find additional interests in need of protection. *Edenfield v. Fane*, 507 U.S. 761, 768 (1992). The burden of establishing these interests is not satisfied by mere speculation or conjecture. There must be a demonstration that the harms cited are real. [*4] *Edenfield*, 507 U.S. at 770-71. The evidence of the governmental interest can come from anecdotes, studies, literature published in the issue. *Edenfield*, 507 U.S. at 771-773; *Florida Bar*, 515 U.S. at 626-627.

The proponents observe that 15 states, including Illinois, have enacted similar bans on unsolicited facsimiles. They also note that two separate Congresses held hearings on the issue. Subcommittees took testimony on the issue and members noted anecdotal information from constituents on the issue. One Congressman, Edward Markey of Massachusetts, likened receiving an unsolicited fax to receiving "junk mail with the postage due." Private citizens from various walks of life, including the legislative counsel for the American Civil Liberties Union, noted the burden imposed on consumers by the cost shifting effect of receiving an unsolicited advertisement by telephone facsimile.

The Congress also received testimony as to the business disruption caused by this activity. Witnesses testified as to the inability to access equipment because it was occupied by an uninvited user. Evidence was also taken which indicates necessary or anticipated communications were disrupted.

There is no record of similar proceedings in the Senate. However, the bills of both Houses were reconciled in committee. The Court, without invading the separation of powers, cannot find or conjecture that there was anything but a complete consideration of the issues when the TCPA was enacted.

In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress. The Supreme Court has recognized that Congress is better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon legislative questions. [HN2] Even in the realm of First Amendment, where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided. *Turner Broadcasting System, Inc., v. F.C.C.,* 520 U.S. 180, 195-196 (1996). Thus, it appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity.

The defendant's argue that improved technology has substantially reduced that burden. Modern fax machines no longer use expensive special papers. Increased [*5] memories allow for multi-tasking by the equipment virtually eliminating the "temporary kidnapping" of facsimile machines. Thus, they posit, any interests identified by Congress have dissipated. The Congress, perhaps in anticipation of the vast explosion in technology, received testimony concerning the increased capacity of the senders of these messages. Indeed, one of the defendants, Fax.Com, solicits customers with a promise to save more than 75% over direct mail costs. The Court can infer that some of these savings are passed on to consumers who must now pay for the printing. Evidence adduced in other cases involving this issue confirm the problems identified by the Congress still exists. See, *Missouri ex. Rel. Nixon v. American Blast Fax, Inc.,* 196 F. Supp. 2d 920, 924-26 (testimony concerning business disruptions, preventing access to phone lines, occupying personnel with other duties, increased capacity of facsimile senders). Nothing presented by the defendants, however, undermines the continued existence of the identified and substantial government interests.

The defendants also assert that the prohibition of these facsimile transactions is not dissimilar to the receipt of junk mailings. While it is true that the Court could find no substantial interest in prohibiting the distribution of unwanted "junk mail," *Bolger v. Young Drug Products Corp.,* 463 U.S. 60 (1983), the Court was never asked if the recipient was also required to pay the "postage due" on the mailing or pay a toll on the trip to the wastebasket, let alone subsidize the mailer's printing expense. The defendants also place great emphasis on *Missouri ex. rel. Nixon v. American Blast Fax, Inc., supra.* Unfortunately, as is the fate of all trial judges, the Appellate panel found fault with Judge Limbaugh's analysis and reversed this decision. *Missouri ex. rel. Nixon v. American Blast Fax, Inc.,* 2003 U.S. App. Lexis 5469 (8th Cir. 2003)(Doc. 02-2705/2707).

Having found the existence of two substantial governmental interests, the Court must determine whether the legislative enactment directly addresses these interests. This requires the Plaintiffs to demonstrate that the restriction imposed will not only advance the governmental interest, but that it will do so to a material degree. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 505 (1996). [HN3] This Court does not find that the TCPA creates a complete ban on telephone facsimile advertising. There is nothing in the law that prevents a distributor from soliciting and obtaining consents for such advertising. [*6] This can be done in a number of ways such as direct mail or contact, solicitations in printed media, or telephone solicitation. Perhaps the best way to identify the parameters of this requirement is to furnish examples of restrictions that were found unrelated to the asserted interest. The City of Cincinnati, no doubt attempting to dissipate any image from its nickname Porkopolous, enforced an ordinance limiting news racks in order to improve community aesthetics. The result was a reduction of the over 1600 such racks by 62. The publications using these racks were not "mainstream" media. The reduction in unsightly news boxes was in the words of two courts "paltry" or "minute." The regulation, however, was found to have no relation to the stated governmental interest. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 424 (1993). Similarly, a ban on radio advertising of private state government authorized casino gambling by a federal regulation was found to have no relation to the recognized government interest of reducing gambling. This result was reached because the ban excluded promotion of Indian sponsored casinos and state run lotteries. *Greater New Orleans Broadcasting Assn. v. United States,* 527 U.S. 173 (1999).

[HN4] This restriction directly and materially advances the governmental interest in the efficient operation of commercial enterprises. The cost to industry of both increased operating expenses and lost productivity was amply demonstrated to Congress.

The defendants note the failure to include unsolicited non-commercial faxes supports their position that the goals of the government are not being advanced by the TCPA because these faxes also shift costs and disrupt the orderly conduct of business. They cite to decisions such as *Greater New Orleans Rubin v. Coors Brewing Co.,* 514 U.S. 476 (1995). Each of these cases had one distinguishing fact, because in those cases there was no basis to suggest the bans would advance the stated goals. Gambling would not be reduced because Indian sponsored casinos and lotteries could be promoted. Temperance would not be promoted, because alternate means of advertising the alcoholic content of beer was available.

More importantly, the Congress heard evidence that private or non-commercial facsimile transmissions represented but a small percentage of unsolicited messages. Most recipients welcomed the message. Thus, no concern over this segment of

unsolicited messaging was ever expressed to the Congress.

[*7] The other issues raised by the defendants are equally unpersuasive. The Supreme Court has noted that unsolicited junk mail cannot be prohibited because "the short, though regular journey from mail box to trash can...is an acceptable burden so far as the Constitution is concerned." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. at 72 quoting *Lamont v. Commissioner of Motor Vehicles*, 269 F. Supp. 880, 883 (S.D.N.Y. 1967). There can be no greater cost in taking the short regular walk to the telephone and hanging up on an unsolicited telemarketer. Some of our more imaginative fellow citizens may actually enjoy the exercise as a diversion from the insipid television, or tense moments at the dinner table.

The final prong is the determination that the regulation is not more extensive than necessary to serve the asserted interest. This, in the area of commercial speech, does not mean the least restrictive means. The case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (1999). The defendants posit that there were numerous less restrictive alternatives such as allowing one free fax so that the recipient could notify the sender of any desire not to receive further messages. Another suggestion would be the creation of a "no-fax" list similar to that established by the government to reduce unwanted telemarketing. The defendants also suggest that regulations as to the times when fax messaging can occur would also be less restrictive.

The Plaintiffs and the Intervening United State of America attempt to shift the burden of disproving the existence of the fourth prong of the Central Hudson test. The standard, however, is that the proponent of the statute must show that Congress "carefully calculated the costs and benefits associated with the burden on speech imposed by the regulations." *City of Cincinnati*, 507 U.S. at 417.

To make this determination, it appears to this Court it is important to understand the effect of the TCPA ban on unsolicited commercial telephone facsimile messaging. [☞ 4] This statute does not prevent any person engaged in commercial activity from either sending or receiving information about that activity. In fact, it does not prohibit the use of telephone facsimile devices for advertising. It requires the advertiser to identify those persons who are willing to expend their resources both in time and money to receive the commercial messages being sent..

[*8] It prohibits the advertiser from passing part of its costs on to a potential consumer. From this understanding, the Court must determine if the restriction imposed, while perhaps not the single best disposition, is one whose scope is in proportion to the interest served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). The suggestions by the defendants as to the regulation of message delivery times does nothing to advance the government interest of preventing cost-shifting. It is also apparent that the concerns Congress addressed in the TCPA were different in the regulation of telemarketers and facsimile advertising. There was a clear recognition of the substantial interference caused by the blast fax industry. It is not this Court's role to substitute its judgment for that of the Congress. The ban on unsolicited commercial telephone facsimile messaging is a reasonable means to the stated government end.

The defendants posit that section 227(b) of the TCPA is unconstitutionally vague. They argue that the definition of the term "unsolicited advertisement" is so vague that persons of common understanding must necessarily guess at its meaning. This ambiguity is exacerbated because senders are subject to private claims, creating a likelihood of differing interpretations in various jurisdictions.

The Due Process Clause of the Fifth Amendment to the United States Constitution, made applicable to the various states by the Fourteenth Amendment, is fundamentally violated by "any statute which either forbids or requires the doing of any act in terms so vague that (persons) of common intelligence must necessity guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). In Connally, the Court found that a statute that requires, under progressive penalties, that workers be paid the "current rate of wages" in the "locality" where they were working to be too vague to satisfy Due Process concerns. The Court noted that the term "locality" had no definition as to what area constituted a locality. Mr. Justice Sutherland, writing for the Court, recognized that reasonable people could differ as to the boundary of the "locality." The Court indicated that terms that are elastic or dependent on circumstances were problematic. Similarly, the Court found that the term "current rate of wages" was too vague. The Court noted that rates of pay had various levels begetting a minimum or maximum or an amount in between. This uncertainty left an employer to guess at the required payment. The Court also observed that judges and jurors had no [*9] standards by which to judge an accused's conduct. This could lead to very inconsistent results in the prosecution of alleged violations.

Comparing the Connally decision with the Court's decision in *Roberts v. United States Congress*, 468 U.S. 609 (1984) gives a clearer understanding of the principle. In that case, the Jaycees challenged a determination by the Minnesota Human Rights Department that the Jaycees denied access to a "place of public accommodation" on the basis of the applicant's gender. The Jaycees argue that the term's definition was too vague to satisfy Due Process requirements. This term was defined by Minnesota Law as "a business accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services or facilities, privileges, advantages, or accommodations are extended, offered, sold or otherwise made available to the public." Roberts, 468 U.S. at 469. Membership in the Jaycees was offered to any male applicant aged 21-35 who paid the appropriate fees. Women were accepted as Associate Members but were denied certain benefits given to their male counterparts.

The Jaycees main argument focused on Minnesota's decision that this organization was a public place of accommodation while a similar group, the Kiwanis Club, was not. This created, according to the Jaycees, the sort of vagueness the Due Process Clause was designed to prohibit. In dismissing this argument, the Court found that unlike the open enrollment policy of the Jaycees, Kiwanis Clubs has a formal procedure for choosing members based on specific and selective criteria. These additional standards were clearly outside the contested definition found in the Minnesota law.

Turning now to the TCPA, an "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property goods or services." 47 U.S.C. 227 (a)(4). Merriam Webster defines commercial, when used as an adjective, in numerous ways, including, "work intended for commerce, producing artistic work of low standards for quick market success, suitable, adequate or prepared for commerce, and emphasizing skills or subjects useful in business." Merriam Webster's Collegiate Dictionary, 10 th Ed. 1994. In addition, at least one commentator has identified distinctions between commercial and non-commercial speech found in the Supreme Court's analysis of this issue. First, the truth of the information is more easily verifiable, [*10] and secondly, it is engaged in "for profit." Kosinski and Banner, "Who's Afraid of Commercial Speech?"76 VA. L. REV. 627, 634. Admittedly, the authors argue that these are distinctions without difference, but this Court must acknowledge and give deference to these well-established principles continually enunciated by our Supreme Court.

[☞5] Prior to answering the question as to whether the statute is vague by subjecting it to questions presented by hypothetical situations, the Court must determine if the defendants conduct comes clearly within the proscription of the statute. Village of Hoffman Estates v. The Flipside, Hoffman Estates, 455 U.S. 489, 495 (1981). Clearly, it does. Each facsimile message advertises the price and availability of services, such as, internet connections, long distance or cellular telephone service, or products such as packaged learning programs, or toner for facsimile and other printing devices. Thus, the defendants should not be heard to complain of the statute's vagueness.

Assuming arguendo, that the Defendant's hypotheticals should be considered, the Court's analysis suggests the following resolutions. A carwash or candy sale is not conducted by a high school band for profit in the business sense of the word "commercial." A plea to oppose apartheid in the manner suggested does not advertise the commercial availability or quality of a product, nor does the announcement, without more, of an essay contest. A warning concerning the danger of a product would be subject to an affirmative defense of necessity, 720 ILCS 5/7-13, or privilege. The availability of private enforcement of the statute does not give the theoretical plaintiffs "unrestrained power...(to) charge a person with a violation." Kolender v. Lawson, 461 U.S. 352, 359 (1983). As indicated, the statute has a clear meaning and is easily understandable by persons of common intelligence. A defendant wrongfully sued would have all remedies that are available to any person so situated.

Thus, this Court does not find that the TCPA violates the Due Process prohibition against vague statutes.

The defendants finally assert that the TCPA's damage clause violates the Due Process clause of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

The Due Process Clause of the Fifth and Fourteenth Amendments prohibits federal and state governments, respectively, from imposing a "grossly excessive" punishment on [*11] a tortfeasor. TXO Production Corp. v. Alliance Resource Corp., 509 U.S. 443, 454 (1993). In order to make this determination, the Court must first identify the interest the government seeks to protect and then determine whether the award is grossly excessive in relation to those identified interests. TXO, 509 U.S. at 456.

The Court has already identified those interests as preventing the shifting of advertising costs to potential consumers and promoting the efficient operation of this nation's businesses. The Court also notes that each defendant received adequate notice of the potential penalty if their conduct deviated from the required norm. Thus, the Supreme Court's decision nullifying an award for punitive damages on the basis of lack of notice is inapposite. BMW of North American v. Gore, 517 U.S. 559 (1995). Unlike the situation before the Court here, BMW was not sufficiently informed that the same conduct which was acceptable in some jurisdictions, but not in others, was subject to a penalty 500 times greater than the actual loss. It is clear that the penalty here is even greater, but unlike the operators of BMW, who had no notice that the procedure employed ran afoul of the law in Alabama, the statute clearly proscribes the conduct before any defendant acted. Thus, the standard to be applied is more properly found in St. Louis, Iron Mountain & Southern Railway v. Williams, 251 U.S. 63 (1919). There, the Court acknowledged the wide latitude that legislatures have in protecting public interest, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established law. This Court is wary of substituting its judgment for that of Congress. The Court is also concerned about the potential damage claims in this case. However, no evidence has been introduced quantifying the amount of damages incurred by businesses in lost productivity. Thus, no mathematical certainty can be reached as to the relationship between actual damages and the penalty imposed. The defendants correctly point to the problems confronted by Judge Spears in Texas v. American Blast Fax, Inc., 164 F. Supp. 2d 892 (D.C. TX. 2001). [☞6] Any penalty computed by multiple violations would be a result of the defendants' use of technology to aggressively violate a statute that is clear on its face. However, this issue must await full resolution until all of the evidence is heard, so that a complete record can be established.

Thus, the Court does not find the TCPA on its face imposes a sanction grossly disproportionate to the interests sought to be protected.

[*12] Turning now to the Eighth Amendment excessive fine issue. This analysis is similar to that under the prior Due Process inquiry. A fine is a valid exercise of the legislature unless it is grossly disproportionate to the nature of the violation. *United States v. Bajakjian*, 524 U.S. 321 (1998). However, as the dissent in that decision noted, substantial deference must be given legislative determinations as to sanctions for illegal acts. *Bajakjian*, 524 U.S. at 348. On this record, this Court cannot make such a determination, thus, the Motion to Dismiss is denied.

Having found the TCPA constitutional the Court moves to analyze the remaining issues.

### III. THE PLAINTIFFS MAY NOT PROSECUTE A PRIVATE RIGHT OF ACTION IN ILLINOIS COURTS

The defendant's assert that no private action for violations of the TCPA can be maintained in Illinois state courts because Congress' action in establishing private rights of action in state courts violates the Tenth Amendment to the United States Constitution, and Illinois has never authorized the prosecution of TCPA matters in its courts, providing only for criminal sanctions. The four arguments advanced by the defendants are, in this Court's opinion, summarized above. Article VI of the United States Constitution provides that the laws of the United States made pursuant to the Constitution "shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby."

In *Testa v. Katt*, 330 U.S. 386 (1947), the Court was called upon to determine whether Rhode Island's courts could properly refuse to hear a claim brought under the Emergency Price Control Act. Unlike the TCPA , this law gave concurrent jurisdiction to Federal, State, and Territorial Courts to entertain these claims. The basis for the declination by the Rhode Island Courts was the traditional right enjoyed by the states to enforce penal laws of a foreign state. The Court noted that since the time of the first congress, laws have been enacted conferring jurisdiction on state courts to enforce federal penal statutes. While disputes raged over the relationship between federal and state governments during the first half of the 19 th Century and ultimately, albeit temporarily, were resolved by war, the Supreme Court has been predictably steadfast in holding, "If an Act of Congress [*13] given a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not been forced, if not provided otherwise by some act of Congress, by a proper action in a State Court." *Claflin v. Houseman*, 93 U.S. 130, 137 (1876). Thus, in *Testa*, the Court dismissed as inadmissible the argument that the state's law must be consistent with the federal regulatory scheme.

In *International Science and Technology Institute, Inc., v. Inacom Communications, Inc.*, 106 F. 3d 1146 (4 th Cir. 1997), a decision relied on heavily by the defendants, after determining that the TCPA granted exclusive jurisdiction for the private right of action in state courts, the court considered the Tenth Amendment argument. The court noted that the TCPA was enacted, in part, in response to claims by several states that efforts to curb unsolicited facsimile messages were being thwarted by the simple fact that many of these messages were traveling in interstate commerce, an area the States designated to be regulated by Congress in ratifying the U.S. Constitution. The Court then acknowledged the role of the Supremacy Clause in our constitutional structure. After expressing concern that Congress not impermissively usurp state resources as prohibited by *New York v. United States*, 505 U.S. 144 (1992), the Court stated any potential conflict was avoided by allowing states to affirmatively deny access to its courts for the private prosecution of TCPA claims.

[☞7] This reasoning is persuasive to this Court. This, as the Court noted, strikes a balance between the right of Congress to regulate interstate commerce and the state's right to allocate its resources to problems it deems necessary and important. The TCPA only encourages state participation in Congress' regulatory scheme. Local officials, accountable to their electors, make the decisions as to state priorities. This also recognizes the role of the Supremacy Clause in our dual sovereign form of government.

Thus, this Court finds no prohibition to the maintenance of a private right of action for violation of the TCPA in state courts because Illinois has not acted to decline jurisdiction over these matters.

### IV. CONVERSION

The Defendants have filed a Motion to Dismiss the counts of Plaintiffs' consolidated complaint alleging conversion pursuant to Section 2-615 of the Code of [*14] Civil Procedure, 735 ILCS 5/2-615. A Section 2-615 motion to dismiss attacks the sufficiency of the complaint, and this Court should decide the motion only on the allegations set forth in the complaint. *Schwanke, Schwanke and Assoc. v. Martin*, 241 Ill. App. 3d 738, 744 (1 st Dist. 1992). All well-pleaded facts in the complaint must be taken as true with all inferences from it to be drawn in favor of the non-movant. *Curtis Casket Co. v. D. A. Brown*, 259 Ill. App. 3d 800, 804 (1 st Dist.1999). This Court accepts as true all well-pleaded facts, but does not need to accept conclusions or inferences which are not supported by specific factual allegations.

In their complaint, the Plaintiffs allege that the Defendants sent telephone facsimile messages to the Plaintiffs without obtaining prior permission. The complaint further alleges, prior to the initiation of the transmission, that each plaintiff had purchased paper and toner for their respective use and had an immediate right to the possession and use of these items. Plaintiffs further allege that the receipt of the unsolicited facsimile message resulted in the unauthorized use of toner and

paper by the defendants which rendered these items unusable by the Plaintiffs.

[☞8] To sufficiently allege conversion a plaintiff must allege: 1) the defendant's unauthorized and wrongful act of control, dominion or ownership over the plaintiff's personal property; 2) the plaintiff's right in the property; 3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and, 4) the plaintiff's demand for possession of the property. *Roderick Development Investment Company, Inc. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052 (1996). The complaint seeks actual and punitive damages as well as an injunction against future acts of conversion.

At the outset, it must be noted that the complaint does not allege conversion of the Plaintiff's fax machine, only its paper and toner. Thus, cases such as *Omnibus International, Inc. v. AT & T*, 2002 Tex. App. LEXIS 8234 (TX. App. 2002) are inapposite. Moreover, this case remains an unpublished opinion, and under Texas Law it cannot be cited as authority.

The Plaintiffs have pled facts alleging each element of conversion. [☞9] As observed earlier in this opinion, the use of a facsimile machine for the distribution of printed material shifts the recipient of the materials into the role of printer. This imposes all of [*15] the attendant costs on an unwilling recipient. This is sufficient to allege the first three elements of the tort.

The final element, however, has not been alleged. This element is unnecessary when there is another independent act of conversion that can be shown. *Jensen v. Chicago and Western Indiana R. R. Co.*, 94 Ill. App. 3d 915, 933 (1981). The allegations and reasonable inferences clearly indicate that the paper and toner had been consumed in the process of printing the advertisements sent by or on behalf of the Defendants.

Therefore, the Court finds there are sufficient allegations to state a claim for conversion.

[☞10] The Defendants assert that not withstanding the existence of a properly pled claim, any damages suffered by the proposed class representative are so inconsequential that no claim should be recognized. They opine that the cost incurred by the receipt of an individual facsimile message, including paper, is no more than eight cents. Initially, the Court must recognize that the doctrine of *de minimus non curat lex* is usually confined to matters involving an alleged breach of contract. It is applied to avoid finding a breach where the harm caused is so slight or the damages nominal. *Pacini v. Regopoulous*, 281 Ill. App. 3d 274, 279 (1996). This Court also agrees that much, if not all, of the Plaintiffs arguments and citations do not speak to the relevant issues. Having made these observations, however, this Court is compelled to deny the Motion to Dismiss.

Illinois and other jurisdictions recognize that where a party has established an infringement of a right, damages are presumed. *Ainsworth v. Century Supply Co.*, 295 Ill. App. 3d 644, 649-650 (1998). This entitles a plaintiff to an award of nominal damages. In *Ainsworth*, the plaintiff was depicted in an advertisement for the commercial availability of floor covering products and supplies from the defendant. The use of plaintiff's likeness was unauthorized. In his deposition, the plaintiff testified that he was angered to see the commercial. In reversing the grant of summary judgment, the Court held that the plaintiff was entitled to an award of nominal damages, perhaps even the value achieved by Century by taking his image for their use. *Ainsworth*, 295 Ill. App. 3d at 650. This presumption also arises where, as here, the claim is an intentional tort. *Crosby v. City of Chicago*, 11 Ill. App. 3d 625, 630 (1973).

[*16] With respect to injunctive relief, the Plaintiffs, however, have not shown their lack of an adequate remedy at law. The Plaintiffs can seek damages under this theory as well as the TCPA, hence, their claim for injunctive relief is dismissed with prejudice. Similarly, the Plaintiffs claim for punitive damages is not supported by well-pled facts. There are no allegations of fraud, actual malice, gross negligence or willfulness, beyond that to state a claim for conversion. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 115- 16 (1988). Moreover, absent some proof of activity undertaken to inundate a particular recipient with telephone facsimile messages, this Court doubts that such a claim will ever lie. In making this statement, the Court has considered the volume of messages modern technology permits. Nevertheless, discovery may lead to the discovery of facts that will make such a claim viable. Thus, subject to a Motion to Amend Pleadings, the claim for punitive damages is dismissed without prejudice.

## V. ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICE ACT

The defendants have filed a Motion to Dismiss the count seeking relief under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to Section 2-615 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-615. They advance three arguments in support of their Motion. First, they argue that these are insufficient factual allegations to support a claim that damages were proximately caused by the Defendants action. In addition, they assert that the factual allegations are insufficient to support a claim that the defendants engaged in "deceptive" or "unfair" conduct prohibited by the ICFA. Finally, they note that any statutes alleged to be violated by their conduct does not support a "per se" violation of ICFA. The Court will analyze these arguments in the order perceived to be most useful.

Initially, it should be observed that the parties agree there are no allegations of deceptive practices. Thus, in order to establish a claim, the Plaintiffs must allege ultimate facts that show the Defendants engaged in unfair practices. In *Robinson v. Toyota Motor Credit Corporation*, 201 Ill. 2d 403 (2002), our Supreme Court discussed the elements of such a claim.

ICFA is a regulatory remedial statute designed to protect consumers against unfair business practices and is to be liberally construed to effectuate its purpose. *Cripe v. Leiter*, 184 Ill. 2d 185, 191 (1998).

[*17] In *Robinson*, the Court defined the elements of an unfair business practice. In essence, the Court adopted the three-part test cited with approval in *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972). Therefore, in order to measure whether a business practice is unfair, a court must consider the following factors: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive or unscrupulous; and 3) whether it causes substantial injury to consumers. Robinson, 201 Ill. 2d at 417- 418. The Court also noted that all three factors need not be met. Rather, the Court adopted the reasoning of the Connecticut Supreme Court in *Chesire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992). That Court, in a case involving "loan churning" observed that all three criteria need not be satisfied in order to support a finding of unfairness. Rather, a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Chesire*, 223 Conn. at 106.

As the claim is brought under ICFA, the complaint must allege with particularity and specificity the unfair business practices of the defendants. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502 (1996). The Plaintiffs fail to recognize that in a Section 2-615 Motion, the complaint must stand on its own, thus, reference to citations issued by the FCC, reports or hearings are not relevant to the issues and will not be considered in resolving this Motion.

The well-pled facts, taken as true for purposes of this Motion, are set out above. [*11] There is no question that transmitting unsolicited telephone facsimile advertisements violates public policy. First, the Criminal Code of 1961, as amended, prohibits this activity. See, 720 ILCS 5/26-3. Knowledge is defined by the Code in Section 5/4-5. A person acts knowingly when he is consciously aware that a result is practically certain to be caused by his conduct. 720 ILCS 5/4-5(b). There can be no question than any individual who causes a telephone facsimile transmission to occur acts knowingly. In addition, the failure of Illinois to "opt out" of the private enforcement of the TCPA suggests that this Act is the public policy of Illinois as well.

The Plaintiffs allege the conduct is oppressive, yet they allege only one or two facsimile transactions to each Plaintiff. This, by inference, suggests minimal disruption of one's business or occupation. The exhibits to the complaint show each plaintiff had a [*18] reasonable alternative to the receipt of additional messages. They could call to remove themselves from the list. This conduct does not rise to the level of oppression envisioned by the drafters of ICFA.

The final factor requires the allegation of substantial injury to the consumer. In discussing the count alleging conversion, the Court indicated the doctrine of *de minimus non curat lex* had no application in this matter. A complete review of the movants' authorities confirms this position. No case cited involved a tort claim. They involved complaints of short redemption deposits in foreclosure cases, errors in summing damages, or computing interest. The Court acknowledges that the Plaintiff's are not entitled to receive nominal or presumed damages in a claim under ICFA. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992). There are no facts from which the Court can determine the amount of damages incurred by the suggested class plaintiff or consumers as a whole. The term "substantial" is clearly a conclusion.

Thus, evidence of only one of the Robinson factors are found in the Plaintiff's complaint. This Court concludes that the Plaintiff has not stated a claim under ICFA. In reaching this decision, the Court recognizes that the failure to include Illinois' prohibition against unsolicited telephone facsimile transmissions in Section 2Z of ICFA (815 ILCS 505/2Z, also prevents a finding of a per se violation of ICFA. *Illinois ex rel. Daley v. Grady*, 192 Ill. App. 3d 330, 332 (1989).

Therefore, the Count of the Complaint alleging a violation of the Illinois Consumer Fraud and Deceptive Practices Act is Dismissed.

Finally, this Court feels constrained to remark about post-argument activities of the attorneys. It is clearly within the requirements of the Illinois Rules of Professional Conduct to advise the Court of any change of law used in party's argument prior to the Court's decision on the matter. RPC 3.3. The lawyers are to be commended for their action in this regard.

However, this Court seriously doubts that the obligations imposed by that Rule grant counsel a license to present a thirty-plus page brief supporting a clients' position after arguments were closed. If the need arose, a proper motion to re-open arguments would be appropriate.

[*19] This Court, while troubled by the tactic, will regard it as overzealous advocacy and has returned the unsolicited but permitted telephone facsimile transmission as well as the correspondence to counsel unopened and unread.

## VI. ORDER

A. The Motions to Dismiss the Count of the Consolidated Complaint alleging a violation of the TCPA is denied;

B. The Motion to Dismiss the Count of the Consolidated Complaint alleging Conversion is denied;

C. The Count of the Consolidated Complaint alleging a violation of ICFA is dismissed; the Plaintiffs are given 28 days to file an amended complaint;

D. The Defendants shall file answer to the Counts alleging violation of the TCPA and conversion within 28 days;

E. The matter is scheduled for case management conference on May 12, 2003 at 2:30 p.m.

DATED: April 3, 2003. ENTERED: April 3, 2003.

## [*20] EXHIBIT A

DEFENDANTS JOINING IN CONSOLIDATED MOTIONS TO DISMISS IN RELATED TCPA CASES

02 CH 1189 Goldberg v. Wall Street Alert

02 CH 6332 Whiting Corp v. MSI, Y2K Marketing

02 CH 6335 Whiting Corp v. PageComm of Illinois

02 CH 6336 Whiting Corp v. Fax.Com, Inc.

02 CH 6905 Bernstein v. American Family & Bezanis

02 CH 6908 Bernstein v. Fax.Com, Inc.

02 CH 7687 Whiting Corp v. Lucas Associates

02 CH 7745 Construction v. Gersten Financial

02 CH 7748 Construction Consulting Grp v. Qwest Communications, Inc.

02 CH 7824 Construction v. PageComm of Illinois

02 CH 7827 Construction v. Superior Marketing


02 CH 8362 Phillips v. Consolidate Steel Supp

(not joining in conversion motion because no conversion count alleged Consolidated Steel & Supply Co.)

02 CH 8364 Phillips v. Midco, Inc.

02 CH 8641 Elliot-Dunne v. Judicial Attorney Service

02 CH 8714 Martin v. Onstaff, Inc.

02 CH 10491 Elliot-Dunne v. Voicestream Wireless

02 CH 10852 Elliot-Dunne v. Spradling

02 CH 10890 Schlosser v. MSI Marketing

02 CH 10919 Brill v. Johnson

# # #

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT; CHANCERY DIVISION

| | | |
|---|---|---|
| Weiss, Sugar, Dvorak & Dusek | ) | |
| | ) | |
| Plaintiff, | ) | 03 CH 21867 |
| | ) | Judge Patrick E. McGann |
| vs. | ) | Calendar 6 |
| | ) | |
| Human Resource Store, Inc., et al | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion and Order**

This matter comes before the Court on the combined Motion to Dismiss pursuant to 735 ILCS 5/2-619.1 alleging grounds under Sections 2-615 and 619 (a).

## I.    Legal Standard

A section 2-615 motion attacks the legal sufficiency of the Plaintiff's claim. The motion does not raise affirmative factual defenses, but rather alleges defects only on the face of the complaint. The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Vernon v Schuster* 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996).

Section 2-619 affords a means of obtaining a summary disposition of issues of law or easily proven issues of fact. Subsection (a) (9) permits dismissal where "the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating a claim."

The phrase affirmative matter encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. For that reason, it is recognized that a 2-619 (a) (9) motion to dismiss admits the legal sufficiency of the plaintiff's cause


EXHIBIT

B

of action much in the same way that a 2-615 motion to dismiss admits a complaint's well-pleaded facts. *Kedzie & 103rd Currency Exchange v Hodge*, 156 Ill. 2d 112, 115 (1993).

## II.     Well-Pled Facts

The Defendants are alleged to have sent a three-page bold faced type telephone facsimile message to the Plaintiff with neither permission nor invitation. The message offered the opportunity to attend a seminar on recruiting or hiring personnel. The opportunity to purchase video training tapes or obtain consulting services in these areas.

When the message is received by the Plaintiff's telephone facsimile machine it prints the message on the Plaintiff's paper. This allows, it is alleged, the Defendants to pass their advertising costs on to the Plaintiff. The fax contains a "memo" format message from Mr. Ruh offering consulting services, as well as, a solicitation for the purchase of the described goods and services from the Human Resource Store, Inc.

This conduct is alleged to constitute a violation of the Telephone Consumer Protection Act ("TCPA"),[1] common law conversion and a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").[2]

## III.    Discussion

### A. Constitutional Issues

The defendants in their Motion to Dismiss the Plaintiff's claims brought pursuant to the TCPA, assert that the regulation of advertisement by telephone facsimile is unconstitutionally vague and unnecessarily impinges on freedom of speech rights granted by the First Amendment. In addition, they argue that the TCPA violates the advertiser's Due Process Rights under the Fifth and Fourteenth Amendments and imposes excessive fines in violation of the Eighth Amendment.

The Telephone Consumer Protection Act provides in relevant part; "It shall be unlawful for any person...to use any (transmitting device)...to send an unsolicited advertisement to a telephone facsimile machine."[3] The term "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior

---

[1] 47 U.S.C. § 227
[2] 815 ILCS 505/2 et seq.
[3] 47 U.S.C. 227 (b)(1)(c)

2

express invitation or permission."[4] Thus, the TCPA prohibits only commercial
advertising.

As the statute in question seeks to regulate commercial speech, it must meet the test
set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New
York,* 447 U.S. 57 (1980). Initially, it must be observed that commercial speech is
different from other varieties of speech because it proposes a commercial transaction
which traditionally occurs in an area subject to governmental regulation. *Ohralik v. Ohio
State Bar Assn.,* 436 U.S. 447, 445-456 (1978). However, any regulation of such speech
must be cognizant of the controlling principle that our union depends on a free enterprise
economy. The allocation of societies resources depend upon a free flow of information.
Thus, it is in society's interest that a free flow of information be maintained so that the
consumer has enough information to make intelligent and well informed decisions.
*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.,* 425 U.S.
748 (1976).

In order to maintain the balance between the limited ability of government to regulate
commercial speech and the consumer's right to the full and free flow of information, the
Court in *Central Hudson* adopted a four part analysis to determine the constitutionality of
any proposed restriction on commercial speech. First, the court must determine whether
the speech comes within the First Amendment. To be protected, such speech must
concern lawful activity and not be misleading. Next, the court must determine whether
the government's interest in regulating the communication is substantial. If these two
tests are met, then a determination must be made as to whether the regulation directly
advances the governmental interest asserted and whether it is not more extensive than
necessary to serve the asserted interest. *Central Hudson,* 447 U.S. at 566.

Applying this analysis to the TCPA's ban on unsolicited telephone facsimile
advertising, it is clear there is no claim that any of the information distributed is
misleading or promotes any illegal activity.

The Plaintiffs bear the burden of establishing that the legislation survives the
remainder of the analysis. *Florida Bar v. Went For It, Inc.,* 515 U.S. 618 (1995). The
Plaintiffs and the intervening Petitioner United States of America, posit that the TCPA

---

[4] 47 U.S.C. 227(a)(4).

3

was enacted to address the substantial government interest of preventing the shifting of the cost of advertising to the potential consumer and the economic disruptions caused by the intrusive activity of the defendants. The Plaintiffs include this later interest under the broad umbrella of "invasion of privacy." The court's determination of substantial governmental interest is limited to these two pronouncements. This court cannot engage in supposition to find additional interests in need of protection. *Edenfield v. Fane*, 507 U.S. 761, 768 (1992). The burden of establishing these interests is not satisfied by mere speculation or conjecture. There must be a demonstration that the harms cited are real. *Edenfield*, 507 U.S. at 770-71. The evidence of the governmental interest can come from anecdotes, studies, literature published in the issue, 507 U.S. at 771-773; *See* also *Florida Bar*, 515 U.S. at 626-627.

The Plaintiff observes that 15 states, including Illinois, have enacted similar bans on unsolicited facsimilies. They also note that two separate Congresses held hearings on the issue. Subcommittees took testimony on the issue and members noted anecdotal information from constituents on the issue. One Congressman, Edward Mackey of Massachusetts, likened receiving an unsolicited fax to receiving "junk mail with the postage due." Private citizens from various walks of life, including the legislative counsel for the American Civil Liberties Union, noted the burden imposed on consumers by the cost shifting effect of receiving an unsolicited advertisement by telephone facsimile.

The Congress also received testimony as to the business disruption caused by this activity. Witnesses testified as to the inability to access equipment because it was occupied by an uninvited user. Evidence was also taken which indicates necessary or anticipated communications were disrupted.

There is no record of similar proceedings in the Senate. However, the bills of both Houses were reconciled in committee. The Court, without invading the separation of powers, cannot find or conjecture that anything but a complete consideration of the issues occurred when the TCPA was enacted.

In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress. The Supreme Court has recognized that Congress is better equipped than the judiciary to amass and evaluate the vast amounts of

4

data bearing upon legislative questions. Even in the realm of First Amendment, questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided. *Turner Broadcasting System, Inc., v. F.C.C.,* 520 U.S. 180, 195-196 (1996). Thus, it appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity.

The defendants argue that improved technology has substantially reduced that burden. Modern fax machines no longer use expensive special papers. Increased memories allow for multi-tasking by the equipment virtually eliminating the "temporary kidnapping" of facsimile machines. Thus, they posit, any interests identified by Congress have dissipated. The Congress, perhaps in anticipation of the vast explosion in technology, received testimony concerning the increased capacity of the senders of these messages. Indeed, one of the defendants, Fax.Com, solicits customers with a promise to save more than 75% over direct mail costs. The Court can infer that some of these savings are passed on to consumers who must now pay for the printing. Evidence adduced in other cases involving this issue confirm the problems identified by the Congress still exist. *See, Missouri ex. Rel. Nixon v. American Blast Fax, Inc.,* 196 F. Supp. 2d 920, 924-26 (testimony concerning business disruptions, preventing access to phone lines, occupying personnel with other duties, increased capacity of facsimile senders) *rev'd on other grounds, Missouri ex. rel. Nixon v. American Blast Fax, Inc.,* 2003 U.S. App. Lexis 54/69(8th Cir. 2003)(Doc. 02-2705/2707). Nothing presented by the defendants undermines the continued existence of the identified and substantial government interests.

The defendants could also assert that the prohibition of these facsimile transactions is not dissimilar to the receipt of junk mailings. While it is true that the Court could find no substantial interest in prohibiting the distribution of unwanted "junk mail", *Bolger v. Young Drug Products Corp.,* 463 U.S. 60 (1983), the Court was never asked if the recipient was also required to pay the "postage due" on the mailing or pay a toll on the trip to the wastebasket, let alone subsidize the mailer's printing expense.

Having found the existence of two substantial governmental interests, the Court must determine whether the legislative enactment directly addresses these interests. This

requires the Plaintiff to demonstrate the restriction imposed will not only advance the governmental interest, but do so to a material degree. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 505 (1996). This Court does not find that the TCPA creates a complete ban on telephone facsimile advertising. There is nothing in the law that prevents a distributor from soliciting and obtaining consents for such advertising. This can be done in a number of ways such as direct mail or contact, solicitations in printed media, or telephone solicitation. Perhaps the best way to identify the parameters of this requirement is to furnish examples of restrictions that were found unrelated to the asserted interest. The City of Cincinnati, no doubt attempting to dissipate any image from its 19th century nickname "Porkopolous," enforced an ordinance limiting news racks in order to improve community esthetics. The result was a reduction of the over 1600 such racks by 62. The publications using these racks were not "mainstream" media. The reduction in unsightly news boxes was in the words of two courts "paltry" or "minute." The regulation, however, was found to have no relation to the stated governmental interest. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 424 (1993).

Similarly, a ban on radio advertising of private state government authorized casino gambling by a federal regulation was found to have no relation to the recognized government interest of reducing gambling. This result was reached because the ban excluded promotion of Indian sponsored casinos and state run lotteries. *Greater New Orleans Broadcasting Assn. v. United States,* 527 U.S. 173 (1999).

This restriction directly and materially advances the governmental interest in the efficient operation of commercial enterprises. The cost to industry both in increased operating expenses and lost productivity, was amply demonstrated to Congress.

The defendants note the failure to include unsolicited non-commercial faxes supports their position that the goals of the government are not being advanced by the TCPA. These faxes also shift costs and disrupt the orderly conduct of business. They cite to decisions such as *Greater New Orleans and Rubin v. Coors Brewing Co.,* 514 U.S. 476 (1995). Each of these cases had one distinguishing fact, there was no basis to suggest the bans in those cases would advance the stated goals. Gambling would not be reduced because Indian sponsored casinos and lotteries could be promoted. Temperance would

6

not be promoted, because alternate means of advertising the alcoholic content of beer was available.

More importantly, the Congress heard evidence than private or non-commercial facsimile transmissions represented but a small percentage of unsolicited messages. Most recipients welcomed the message. Thus, no concern over this segment of unsolicited messaging was ever expressed to the Congress.

The other issues raised by the defendants are equally unpersuasive. The Supreme Court has noted that unsolicited junk mail cannot be prohibited because "the short, though regular journey from mail box to trash can...is an acceptable burden so far as the Constitution is concerned." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. at 72 quoting *Lamont v. Commissioner of Motor Vehicles*, 269 F. Supp. 880, 883 (S.D.N.Y. 1967). There can be no greater cost in taking the short regular walk to the telephone and hanging up on an unsolicited telemarketer. Some of our more imaginative fellow citizens may actually enjoy the exercise as a diversion from the inspid television, or tense moment at the dinner table.

The final prong is the determination that the regulation is not more extensive than necessary to serve the asserted interest. This, in the area of commercial speech, does not mean the least restrictive means. The case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (1999). The defendants posit that there were numerous less restrictive alternatives such as allowing one free fax allowing the recipient to notify the sender of the desire not to receive further messages. Another suggestion would be the creation of a "no-fax" list similar to that established by the government to reduce unwanted telemarketing. In their Reply brief, the Defendants point to recent activity in Congress to create an "established business relationship" exception to the TCPA. This, the Court is urged to find, is evidence of a congressional recognition that the current TCPA scheme is more restrictive than necessary.

The proponent of the statute must show that Congress "carefully calculated the costs and benefits associated with the burden on speech imposed by the regulations." *City of Cincinnati*, 507 U.S. at 417.

7

To make this determination, it appears to this Court it is important to understand the effect of the TCPA ban on unsolicited commercial telephone facsimile messaging. This statute does not prevent any person engaged in commercial activity from either sending or receiving information about that activity. In fact, it does not prohibit the use of telephone facsimile devices for advertising. It requires the advertiser to identify those persons who are willing to expend their resources both in time and money to receive the commercial messages being sent.

It prohibits the advertiser from passing part of its costs on to a potential consumer. From this understanding, the Court must determine if the restriction imposed while perhaps not the single best disposition is one whose scope is in proportion to the interest served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). There was a clear recognition of the substantial interference caused by the blast fax industry. It is not this Court's role to substitute its judgment for that of the Congress. The ban on unsolicited commercial telephone facsimile messaging is a reasonable means to the stated government end.

The recent activity in the Congress is not aimed at the regulatory scheme imposed by the TCPA, but rather on the overly restrictive and conflicting implementation by the FCC. The Court noted in a recent decision[5] that the TCPA must be interpreted broadly so as to not limit legitimate speech. This requires application of the ordinary reasonable man approach to defining terms such as "express permission or invitation." That can readily be ascertained from the circumstances under which the recipient of the message or phone number used was identified. As noted in that opinion some circumstances can be considered an express permission or invitation as a matter of law.

Finally, if the Congress does change the law or redefine terms of the TCPA, the effect can be determined at that time. Any other approach would be reaction to speculation. An exercise not favored by the courts.

The defendants additionally assert that the TCPA's damage clause violates the Due Process of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

---

[5] *Zoes v Banctrust* 03 CH 17879

The Due Process Clause of the Fifth and Fourteenth Amendments prohibit federal and state governments, respectively, from imposing a "grossly excessive" punishment on a tortfeasor. TXO Production Corp. v. Alliance Resource Corp., 509 U.S. 443, 454 (1993). In order to make this determination, the Court must first identify the interest the government seeks to protect and then determine whether the award is grossly excessive in relation to those identified interests. TXO, 509 U.S. at 456.

The Court has already identified those interests as preventing the shifting of advertising costs to potential consumers and promoting the efficient operation of this nation's businesses. The Court also notes that each defendant received adequate notice of the potential penalty if their conduct deviated from the required norm. Thus, the Supreme Court's decision nullifying an award for punitive damages on the basis of lack of notice is inapposite. BMW of North American v. Gore, 517 U.S. 559 (1995). Unlike the situation before the Court here, BMW was not sufficiently informed that the same conduct which was acceptable in some jurisdictions, but not in others, was subject to a penalty 500 times greater than the actual loss. It is clear the penalty here is even greater, but unlike the operators of BMW who had no notice that the procedure employed ran afoul of the law in Alabama, the statute clearly proscribes the conduct before any defendant acted. Thus, the standard to be applied is more properly found in St. Louis, *Iron Mountain & Southern Railway v. Williams*, 251 U.S. 63 (1919). There the Court acknowledged the wide latitude that legislatures have in protecting public interest, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established law. This Court is wary of substituting its judgment for that of Congress. The Court is concerned about the potential damage claims in this case. However, no evidence has been introduced quantifying the amount of damages incurred by businesses in lost productivity. Thus, no mathematical certainty can be reached as to the relationship between actual damages and the penalty imposed. Any penalty computed by multiple violations would be a result of the defendants use of technology to aggressively violate a statute which is clear on its face. However, this issue must await full resolution until all of the evidence is heard, so a complete record can be established.

Thus, the Court does not find the TCPA imposes a sanction grossly disproportionate to the interests sought to be protected.

9

Turning now to the Eighth Amendment excessive fine issue. This analysis is similar to that under the prior Due Process inquiry. A fine is a valid exercise of legislative prerogative unless it is grossly disproportionate to the nature of the violation. *United States v. Bajakajian*, 524 U.S. 321 (1998). However, as the dissent in that decision noted, substantial deference must be given legislative determination as to sanctions for illegal authority. *Bajakajian*, 524 U.S. at 348. As noted, on this record, this Court cannot make such a determination, thus, the Motion to Dismiss is denied. Having found the TCPA constitutional the Court moves to analyze the remaining issues.

### B. Availability of a Private Right of Action

The defendants assert that no private action for violation of the TCPA can be maintained in Illinois Courts because Illinois has never authorized the prosecution of TCPA matters in its courts, providing only for criminal sanctions.

Article VI of the United States Constitution provides that the laws of the United States made pursuant to the Constitution "shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby."

In Testa v. Katt, 330 U.S. 386 (1947), the Court was called upon to determine whether Rhode Island's courts could properly refuse to hear a claim brought under the Emergency Price Control Act. Unlike the TCPA, this law gave concurrent jurisdiction to Federal, State, and Territorial Courts to entertain these claims. The basis for the declination by the Rhode Island Courts was the traditional right enjoyed by the states to enforce penal laws of a foreign state. The Court noted that since the time of the first congress, laws have been enacted conferring jurisdiction on state courts to enforce federal penal statutes. While disputes raged over the relationship between federal and state governments during the first half of the 19th Century and ultimately, albeit temporarily were resolved by war, the Supreme Court has been predictably steadfast in holding, "If an Act of Congress given a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not been forced, if not provided otherwise by some act of Congress, by a proper action in a State Court." Claflin v. Houseman, 93 U.S. 130, 137 (1876). Thus, in Testa, the Court dismissed as inadmissible the argument that the state's law must be consistent with the federal regulatory scheme.

10

The rationale in *International Science and Technology Institute, Inc., v. Inacom Communications, Inc.*, 106 F. 3d 1146 (4th Cir. 1997 is of significant interest. After determining the TCPA granted exclusive jurisdiction for the private right of action to state courts, the court noted that the TCPA was enacted, in part, in response to claims by several states that efforts to curb unsolicited facsimile messages were being thwarted by the simple fact that many of these messages were traveling in interstate commerce, an area the States designated to be regulated by Congress in ratifying the U.S. Constitution. The Court then acknowledged the role of the Supremacy Clause in our constitutional structure. After expressing concern that Congress not impermissively usurp state resources as prohibited by *New York v. United States*, 505 U.S. 144 (1992), the Court stated any potential conflict was avoided by allowing states to affirmatively deny access to its courts for the private prosecution of TCPA claims.

This reasoning is persuasive to this Court. This approach strikes a balance between the Congress' right to regulate interstate commerce and the state's right to allocate its resources to problems it deems necessary and important. The TCPA only encourages state participation in Congress' regulatory scheme. Local officials, accountable to their electors, make the decisions as to state priorities. This also recognizes the role of the Supremacy Clause in our dual sovereign form of government.

Thus, this Court finds no prohibition to the maintenance of a private right of action for violation of the TCPA in state courts because Illinois has not acted to decline jurisdiction over these matters.

### C. Conversion Claim

In their complaint, the Plaintiffs allege that the Defendants sent telephone facsimile messages to the Plaintiffs without obtaining prior permission. The complaint further alleges, prior to the initiation of the transmission, each plaintiff had purchased paper and toner for their respective use and had an immediate right to the possession and use of these items. Plaintiffs further allege that the receipt of the unsolicited facsimile message resulted in the unauthorized use of toner and paper by the defendant's which rendered these items unusable by the Plaintiffs.

To sufficiently allege conversion a plaintiff must allege: 1) the defendant's unauthorized and wrongful act of control, dominion or ownership over the plaintiff's

11

personal property: 2) the plaintiff's right in the property: 3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and, 4) the plaintiff's demand for possession of the property. *Roderick Development Investment Company, Inc. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052 (1996).

At the outset, it must be noted that the complaint does not allege conversion of the Plaintiff's fax machine, only its paper and toner. The Defendants assert that conversion cannot lie because the Plaintiffs had placed the paper and toner in the machine and prepared it for accepting facsimile messages from many sources. This act or series of acts, it is argued, parts with exclusive control of the property and defeats the claim.

This argument ignores the simple fact that the Plaintiffs can rely on others to obey the law. Federal and State law make the conduct engaged by the Defendants, if true, not only civilly, but also criminally wrong. The Plaintiff has the right to give up its exclusive control of its property as it deems appropriate. The Defendants cannot take it to advance commercial prospects.

Therefore, the Court finds there are sufficient allegations to state a claim for conversion.

### D. Illinois Consumer Fraud and Deceptive Practices Act

In their motion, the Defendants assert that the factual allegations are insufficient to support a claim that the defendants engaged in "deceptive" or "unfair" conduct prohibited by ICFA. Finally, they note that any statutes alleged to be violated by their conduct doe not support a "per se" violation of ICFA. The Court will analyze these arguments in the order perceived to be most useful.

Initially, it should be observed that the parties agree there are no allegations of deceptive practices. Thus, in order to establish a claim the Plaintiffs must allege ultimate facts that show the Defendants engaged in unfair practices. In *Robinson v. Toyota Motor Credit Corporation,* 201 Ill. 2d 403 (2002), our Supreme Court discussed the elements of such a claim. ICFA is a regulatory remedial statute designed to protect consumers against unfair business practices and is to be liberally construed to effectuate its purpose. *Cripe v. Leiter,* 184 Ill. 2d 185, 191 (1998).

In *Robinson*, the Court defined the elements of an unfair business practice. In essence, the Court adopted the three part test cited with approval in *F.T.C. v. Sperry & Hutchinson*

12

*Co.*, 405 U.S. 233 (1972). Therefore, in order to measure whether a business practice is unfair, a court msut consider the following factors: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive or unscrupulous; and 3) whether it casues substantial injury to consumers. *Robinson*, 201 Ill. 2d at 417-418. The Court also noted that all three factors need not be met. Rather, the Court adopted the reasoning of the Connecticut Supreme Court in *Chesire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992). That Court, in a case involving "loan churning" observed that all three criteria need not be satisfied in order to support of unfairness. Rather, a practice may be unfair because of the degree to which it means one of the criteria or because to a lesser extent it meets all three. *Chesire*, 223 Conn. at 106.

As the claim is brought under ICFA the complaint must allege with particularity and specificity the unfair business practices of the defendants. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502 (1996). The Plaintiffs fail to recognize that in a Section 2-615 Motion, the complaint must stand on its own, thus, reference to citations issued by the FCC, reports or hearings are not relevant to the issues and will not be considered in resolving this Motion.

The well pled facts, taken as true for purposes of this Motion, are set out above. There is no question that transmitting unsolicited telephone facsimile advertisements violates public policy. First, the Criminal Code of 1961, as amended, prohibits this activity. See, 720 ILCS 5/26-3. Knowledge is defined by the Code in Section 5/4-5. A person acts knowingly when he is consciously aware that a result is practically certain to be caused by his conduct. 720 ILCS 5/4-5(b). There can be no question than any individual who causes a telephone facsimile transmission to occur acts knowingly. In addition, the failure of Illinois to "opt out" of the private enforcement of the TCPA suggests that is the public policy of Illinois as well.

The Plaintiffs allege the conduct is oppressive, yet they allege only one three page facsimile transactions to the Plaintiff. This, by inference, suggests minimal disruption of one's business or occupation. This conduct does not rise to the level of oppression envisioned by the drafters of ICFA.

The final factor requires the allegation of substantial injury to the consumer. In discussing the count alleging conversion, the Court indicated the doctrine of *de minimus*

*non curat lex* had no application in this matter. A complete review of the movants'
authorities confirms this position. No case cited involved a tort claim. They involved
complaints of short redemption deposits in foreclosure cases, errors in summing damages
or computing interest. The Court acknowledges that the Plaintiff's are not entitled to
receive nominal or presumed damages in a claim under ICFA. *Duran v. Leslie
Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992). There are no facts from which the
Court can determine the amount of damages incurred by the suggested class plaintiff or
consumers as a whole. The term "substantial" is clearly a conclusion.

   Thus, evidence of only one of the *Robinson* factors are found in the Plaintiff's
complaint. This Court concludes that the Plaintiff has not stated a claim under ICFA. In
reaching this decision, the Court recognizes that the failure to include Illinois' prohibition
against unsolicited telephone facsimile transmissions in Section 2Z of ICFA (815 ILCS
505/27, also prevents a finding of a per se violation of ICFA. *Illinois ex rel. Daley v.
Grady,* 192 Ill. App. 3d 330, 332 (1989).

   Therefore, the Count of the Complaint alleging a violation of the Illinois Consumer
Fraud and Deceptive Practices Act is Dismissed.

### E. Adequacy of Class Allegations

   The Defendants assert that under the rationale of *Weiss v Waterhouse Securities, Inc.,*
208 Ill. 2d 439 (2004). In order for this Court to allow the matter to continue as a class
action, the complaint must allege sufficient facts that, if true, establish a right of recovery
in each class member. This cannot be done, it is argued, because the Plaintiff's proof of
their claim would not necessarily establish that every person who received a telephone
facsimile message did not give express permission or invitation to the Defendants. This
argument fails.

   First, it appears that the Defendants are attempting to expand the rather narrow scope
of the *Weiss* Court ruling. The Court acknowledged the significantly different standards
to be applied in determining whether a claim filed on behalf of a class is legally sufficient
to pass muster under a Section 2-615 analysis. This requires the allegation of facts, when
considered in the light most favorable to the pleader, that allege every element of the
claim, as well as, the prerequisites for a class action. *Weiss,* 208 Ill. 2d at 453-454. These
allegations are made in the absence of discovery related to class certification issues.

14

The motion to certify a class, however, requires that the elements to employ the procedural class action device be established by reference to facts admitted or gleaned through the discovery process. *Id.* at 453. It may well be that the Plaintiff was the only person aggrieved by the Defendants' transmission of the message. This could occur because there was only one facsimile message sent by the Defendants during the applicable statute of limitations. It may be that the telephone number to which the message was sent was the only one with whom the defendants had no prior existing relationship. These are evidentiary matters that cannot be used to support the potion of the 2-615 motion based on this point.

IV.    **Order**

A. The Defendants' Motion to Dismiss is denied as it relates to the allegations justifying the use of the class action procedural devise, violation of the TCPA and conversion. It is granted as to the Plaintiff's ICFA claim. The Plaintiff is not given leave to replead this claim without leave of Court;

B. The Defendants shall answer the Complaint within 28 days of the initial bench ruling on this matter.

Enter

Judge                    1510

# ENTERED

## OCT 12 2004

**JUDGE
PATRICK McGANN · 1510**

15

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for defendant, certifies that on February 15, 2008, he caused a copy of the foregoing Memorandum of Defendant CSL Biotherapies in Support of Its Motion to Dismiss Counts II and III of Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) to be served by ECF transmission, on:

> Daniel A. Edelman
> Edelman, Combs, Latturner & Goodwin, LLC
> 120 S. LaSalle Street, 18th floor
> Chicago, IL  60603

/s/ Marshall L. Blankenship